E-FILED
Thursday, 24 September, 2026 12:29:40 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| WYNTON COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 26-4187 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se* and currently incarcerated at Hill Correctional Center ("Hill"), filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 1). The Court must "screen" Plaintiff's Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**ALLEGATIONS**

Plaintiff files suit against Wexford Health Sources, Inc. ("Wexford"), Centurion Health ("Centurion"), Nurses Kacey Kramer and Samantha Shinn, Warden Tyrone Baker, Illinois

Department of Corrections ("IDOC") Director Latoya Hughes, John Doe (Correctional Staff), and Jane Doe (Healthcare Staff).

Plaintiff states he suffered a gunshot wound to the head in 2008, which left him with an obvious "caved" deformity on the right side of his head due to the placement of a metallic implant. (Doc. 1 at p. 4). Plaintiff also developed a cognitive/comprehension disability, a learning disability, and a speech impediment, and was diagnosed with epileptic seizures.

When Plaintiff was incarcerated in 2016, the physician at Menard Correctional Center continued Plaintiff's prescription for Gabapentin (1800 mg. 3 times a day) for its dual use as an anticonvulsant and for nerve pain and Tramadol for pain management due to the gunshot wound. Plaintiff alleges he did not experience significant seizure activity until he was transferred to Hill.

On May 29, 2025, Plaintiff notified Defendant Kramer that his prescription for Tramadol needed to be refilled. Plaintiff states that Defendants John and Jane Doe, who pass out medication, are the only ones who see the remaining number of tablets and refills. Plaintiff alleges the "policies and flaws in providing refilled medication without lapse is a widespread policy/behavior that continues to occur under Defendants Wexford Health Sources, Inc. and Centurion." *Id.* On June 29, 2025, Plaintiff put in another request to have his medications refilled. Plaintiff alleges that Defendants John and Jane Doe finally sent the refill request to the pharmacy on July 1, 2025. Plaintiff does not indicate if he missed dosages of his medication between May 29, 2025 and July 1, 2025.

Plaintiff was scheduled to see a medical provider on July 24, 2025, regarding severe head pain and aura, but his nurse sick call appointment was delayed until July 31, 2025. Due to the delay in treatment, Plaintiff alleges he suffered a life-threatening seizure on August 6, 2025. A nurse who responded to the medical emergency attempted to treat the seizure as a drug overdose by

administrating Narcan. Plaintiff did not respond to the Narcan, as the seizure was not drug induced. Plaintiff was sent to the emergency room and intubated. Plaintiff remained hospitalized for two days.

When Plaintiff returned to Hill on August 8, 2025, Dr. Susan Cole determined that Plaintiff could return to the general population and scheduled a follow-up visit on August 19, 2025.

On August 19, 2025, security staff, at the direction of Defendant Warden Baker, canceled Plaintiff's visit with Dr. Cole because Plaintiff had been placed in segregation. The appointment was rescheduled for August 28, 2025, but it was also canceled because Plaintiff remained in segregation. Plaintiff claims that Defendant Baker instituted a policy that prohibits inmates in segregation from seeing a medical provider.

Plaintiff alleges he did not receive the correct dosage of Gabapentin while he was in segregation because Defendants Kramer and Shinn failed to write new prescriptions.

During an appointment with Dr. Cole on September 18, 2025, Dr. Cole referred Plaintiff to a speech pathologist for cognitive testing, but Defendant Centurion denied the referral.

In December 2025, Defendants John and Jane Doe allegedly failed to request refills of Plaintiff's prescriptions in a timely manner. As a result, Plaintiff ran out of Tramadol and Gabapentin for days. Defendant Jane Doe allegedly falsified Plaintiff's medication administration records by indicating that Plaintiff refused his medications on December 21, 2025.

On January 7, 2026, Plaintiff had another seizure, fell from his bunk, and sustained a laceration above his eyebrow. Upon arriving at the HCU, Defendant Kramer treated his seizure as a drug overdose without performing a toxicology test. Defendant Kramer discontinued Tramadol because she deemed it "not necessary," despite Plaintiff's ongoing pain. *Id.* at p. 6. Defendant

Kramer also discontinued Gabapentin, falsely claiming Plaintiff had complained of lethargy. Defendant Kramer prescribed Keppra to replace Gabapentin.

On January 11, 2026, Plaintiff wrote to the Defendants about his intense pain and requested Gabapentin and Tramadol.

On January 15, 2026, Plaintiff was seen at nurse sick call. Plaintiff complained about multiple issues with Keppra, including certain symptoms associated with auras. Plaintiff was referred to see Defendant Shinn on February 26, 2026.

On January 18, 2026, Plaintiff suffered another seizure and was taken to the emergency room. When he returned to Hill, no new medical orders were given, but Plaintiff was scheduled to see Defendant Shinn on January 20, 2026.

On January 20, 2026, Defendant Shinn allegedly refused to return Plaintiff to his original treatment plan with Tramadol and Gabapentin and continued a new treatment plan, which had exponentially increased his seizure activity. Defendant Shinn informed Plaintiff that an emergency room toxicology report from a rapid dip urine test showed that he tested positive for Benzodiazepine, which Plaintiff claims is impossible to acquire in IDOC custody. Plaintiff claims that rapid dip urine tests are known to produce false positives, and no blood toxicology test was performed to confirm the positive result.

After Plaintiff was placed in segregation in February 2026, he continued to experience seizures and was taken to the emergency room.

Plaintiff also alleges Defendants Wexford, Centurion, Shinn, Kramer, and Baker failed to comply with the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Specifically, Plaintiff alleges Defendants Wexford and Centurion violated the ADA and RA by not ensuring all medical records carefully displayed his ADA designation and by denying speech

therapy services. Plaintiff alleges Defendants Shinn and Kramer "ignore[ed] his ADA designation in treatment" and did not review past medical charts and notes for a history of seizures, a learning disability, and an ADA designation. *Id.* at pp. 8, 10. Plaintiff claims Defendant Warden Baker violated the ADA and RA "by not ensuring all ADA designations for the Plaintiff were being followed as to seizure, speech disability, and learning disability protocols in placement and HCU care." *Id.* at p. 10.

**ANALYSIS**

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Based on Plaintiff's allegations, the Court finds that Plaintiff has stated a plausible Eighth Amendment claim against Defendants Kramer and Shinn based on their alleged deliberate indifference to the treatment of his seizures and ongoing pain related to his gunshot wound.

Plaintiff claims Defendant Warden Baker instituted a policy to deny inmates in segregation access to medical providers. While Plaintiff was in segregation, his follow-up appointments with Dr. Cole were canceled at Defendant Baker's direction on August 19, 2025 and August 28, 2025. The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendant Baker based on the cancellation of Plaintiff's appointments with Dr. Cole.

Plaintiff alleges Defendants John and Jane Doe allegedly failed to request refills of his prescriptions for Tramadol and Gabapentin in a timely manner in December 2025 and, as a result, Plaintiff went without his medications for days. Defendant Jane Doe also allegedly falsified Plaintiff's medication administration records by indicating that he refused his medications on December 21, 2025. Based on these allegations, the Court finds that Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendants John and Jane Doe.

Plaintiff also asserts that he requested a refill of his medications on May 29, 2025 and June 29, 2025, but Defendants John and Jane Doe did not send the refill request to the pharmacy until July 1, 2025. Plaintiff does not indicate if he missed doses of his medication during this time. As a result, Plaintiff's claim against Defendants John and Jane Doe is limited to their alleged failure to submit timely refill requests in December 2025.

Plaintiff alleges "[t]he policies and flaws in providing refilled medication without lapse is a widespread policy/behavior that continues to occur under Defendant Wexford Health Sources, Inc. and Centurion." (Doc. 1 at p. 4). The Court finds that Plaintiff's threadbare allegations are

insufficient to proceed on a claim against Wexford or Centurion under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 659 (1978). *See McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir. 2011) (a plaintiff must plead a sufficient factual basis for a *Monell* claim); *see also Olive v. Wexford Corp.*, 494 F. App'x 671, 672–73 (7th Cir. 2012) (bare allegations that Wexford had an unconstitutional policy or practice, "does not identify any concrete policy, let alone an unconstitutional one; it is more in the nature of an insult than the sort of allegation required by *Monell* and *Twombly*"); *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (dismissing *Monell* claim where "allegations of Wexford's policies and practices are vague and broad, lacking in sufficient detail to put Wexford on notice of the claim against it").

Plaintiff names IDOC Director Hughes as a Defendant, but Plaintiff did not include any specific allegations to demonstrate that Defendant Hughes was personally involved in a constitutional deprivation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). It appears that Plaintiff is attempting to hold Defendant Hughes liable based on her supervisory position. There is no *respondeat superior* under § 1983. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Defendant Hughes is dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

Plaintiff's allegations against Defendants Kramer, Shinn, Baker, Wexford, and Centurion are insufficient to proceed on a claim based on alleged violations of the ADA or RA. Plaintiff's

allegations against Defendants Kramer, Shinn, and Baker are too sparse to place them on notice of any specific ADA and RA violations. (*See* Doc. 1 at p. 10). Plaintiff does not claim that he was injured due to a policy or practice of Wexford or Centurion related to ADA designations. Plaintiff also does not allege that Defendant Centurion denied his referral to a speech pathologist based on a policy or practice. *See McCauley*, 671 F.3d at 616 (to adequately plead *Monell* liability, allegations "must allow [the court] to draw the reasonable inference that the [defendant] established a policy or practice" which caused the injury). Defendants Wexford and Centurion are dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

Plaintiff is advised that Defendants John and Jane Doe cannot be served. As such, the Court *sua sponte* names Rodolfo Gonzalez as a Defendant, in his official capacity as the Warden of Hill Correctional Center, to help Plaintiff identify the Doe Defendants. *See Donald v. Cook Co. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996) (concluding that a court may allow the case to proceed to discovery against a high-level official with the expectation that he will aid in identifying any Doe Defendants). Plaintiff may propound written discovery requests upon Warden Gonzalez aimed solely at identifying the Doe Defendants. After the Doe Defendants have been identified, Warden Gonzalez may move to be dismissed. Ultimately, it is Plaintiff's responsibility to identify the Doe Defendants and to file a motion to substitute their real names. The failure to do so will result in the dismissal of the Doe Defendants without prejudice.

**MOTION TO REQUEST COUNSEL**

Plaintiff filed a Motion to Request Counsel asking the Court to appoint an attorney to represent him. (Doc. 10). "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (citing *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007)). When evaluating a Motion to Request Counsel, the Court must consider: "(1) has the

indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?” *Pruitt*, 503 F.3d at 655. "When evaluating a plaintiff's competence, district courts should normally consider the plaintiff's literacy, communication skills, education level, and litigation experience." *Bracey v. Grondin*, 712 F.3d 1012, 1018 n.3 (7th Cir. 2013) (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013). The Court may also consider "the perceived merits of–or likelihood of success on–an indigent plaintiff's claims in its decision whether to allocate scarce pro bono counsel resources to the case before it." *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022).

Plaintiff states he contacted multiple attorneys to request representation. Plaintiff received responses from three law firms which declined to accept his case. Plaintiff states he did not receive a response from the other attorneys he contacted. Plaintiff attached documentation to his Motion demonstrating that he made a reasonable attempt to find counsel. (Doc. 10 at pp. 7-20).

Regarding Plaintiff’s competency, Plaintiff states that he completed some college courses. *Id.* at p. 3. Plaintiff’s Complaint was reasonably well-drafted and organized. (Doc. 1). The Court finds that Plaintiff appears competent to litigate the case himself, especially at this early stage in the litigation process. Plaintiff’s Motion is DENIED.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on (1) an Eighth Amendment claim against Defendants Kacey Kramer and Samantha Shinn based on their alleged deliberate indifference to the treatment of Plaintiff's seizures and ongoing pain related to his gunshot wound; (2) an Eighth Amendment

deliberate indifference claim against Defendant Tyrone Baker for allegedly ordering the cancellation of Plaintiff's appointments with Dr. Cole on August 19, 2025 and August 28, 2025, while Plaintiff was in segregation; (3) an Eighth Amendment deliberate indifference claim against Defendants John and Jane Doe for allegedly failing to submit timely refill requests for Plaintiff's Tramadol and Gabapentin prescriptions in December 2025, causing Plaintiff to go without his medications for days; and (4) an Eighth Amendment deliberate indifference claim against Defendant Jane Doe for falsely indicating in Plaintiff's medication administration records that he refused his medications on December 21, 2025. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) The Court *sua sponte* names Warden Rodolfo Gonzalez as a Defendant, in his official capacity only, to help Plaintiff identify Defendants John and Jane Doe. The Clerk is DIRECTED to add Rodolfo Gonzalez as a Defendant. Plaintiff may propound written discovery requests upon Warden Gonzalez aimed solely at identifying the Doe Defendants. After the Doe Defendants have been identified, Warden Gonzalez may move to be dismissed. Ultimately, it is Plaintiff's responsibility to identify the Doe Defendants and to file a motion to substitute their real names. The failure to do so will result in the dismissal of the Doe Defendants without prejudice.

3) Defendants Wexford Health Sources, Inc., Centurion Health, and Latoya Hughes are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is DIRECTED to terminate Defendants Wexford, Centurion, and Hughes.

4) Plaintiff's Motion to Request Counsel [10] is DENIED.

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

7) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

8) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for

effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

11) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12) Plaintiff shall be provided a copy of all pertinent medical records upon request.

13) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

14) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: September 24, 2026

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge